IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

|                          |     |                    |
|--------------------------|-----|--------------------|
| BELINDA MUHAMMAD,        | )   |                    |
|                          | )   |                    |
|          Plaintiff,      | )   |                    |
|                          | )   |                    |
| vs.                      | )   | No. 09-2573-JPM/dkv |
|                          | )   |                    |
| ADVANCED SERVICES, INC., | )   |                    |
|                          | )   |                    |
|          Defendant.      | )   |                    |
|                          | )   |                    |

---

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS
AND TO REFER CLAIMS TO BINDING ARBITRATION

---

Before the court is the October 26, 2009 motion of the defendant, Advanced Services, Inc. ("ASI"), filed pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 3 and 4, to dismiss or stay the plaintiff's action and refer the claims to final and binding arbitration. (Def.'s Mot. to Dismiss, Doc. No. 5.) The plaintiff, Belinda Muhammad, filed a timely response opposing the motion. (Pl.'s Opp. to Def.'s Mot., Doc. No. 7.) With leave from the district court, ASI filed a reply on December 14, 2009, objecting to an affidavit which Muhammad filed with her response opposing dismissal. (Def.'s Reply to Resp., Doc. No. 10.) Muhammad filed a sur-reply on December 28, 2009, responding to ASI's challenges to her affidavit. (Pl.'s Resp. to Mot. to Strike, Doc. No. 11.)

On March 1, 2010, the district court referred ASI's motion to dismiss to the United States Magistrate Judge for a hearing and report and recommendation. (Order of Ref., Doc. No. 12.) A hearing

was held before the United States Magistrate Judge on May 11, 2010. At the request of the Magistrate Judge, the parties filed supplemental briefs addressing whether the issue of formation and enforceability of the agreement at issue was a decision to be made by the court or an arbitrator. (Def.'s Mem. in Support of Mot. to Dismiss, Doc. No. 20; Pl.'s Reply to Def.'s Post-Hrg. Brief, Doc. No. 23.) With leave of court, ASI filed a reply brief on July 30, 2010. (Def.'s Reply to Resp., Doc. No. 28.) After considering all the parties' arguments, the court recommends that ASI's motion to dismiss be granted and that the district court enter an order compelling arbitration.

## I. PROCEDURAL AND FACTUAL BACKGROUND

From March 28, 2006, until March 20, 2009, Muhammad was employed by ASI at its facility in Memphis, Tennessee. (Compl., at 2.) On March 29, 2006, Muhammad signed an Alternate Dispute Resolution Policy Agreement ("the Agreement") which states in pertinent part:

> I understand and agree that, as a condition of my being hired, I shall use the GE Consumer & Industrial Alternate Dispute Resolution Program (ADRP) as the exclusive means to resolve certain legal claims related to my employment. A copy of the ADRP policy is included with this Agreement and is incorporated by reference into this Agreement.
>
> I further understand and I agree that I will be a "new" employee, as defined by Section II(F) of ADRP policy and that, as a new employee, I waive the right to pursue in court "covered claims," as defined by Section II(L) of ADRP policy.
>
> If I do not settle my claims with the Company before the arbitration level of the ADRP, I understand and agree that I may submit such claims to arbitration which shall be final and binding for both the Company and me. Arbitration of covered claims shall be administered by the American Arbitration Association ("Association"), pursuant to the requirements of ADRP and the Associations's "National Rules for the Resolution of Employment Disputes."

(Def.'s Brief in Supp. Mot to Dismiss Ex. 5-3, at 1.)  The Agreement, through the ADRP policy incorporated by reference, explicitly includes all "[e]mployment discrimination and harassment claims based on ... religion"; all "[r]etaliation claims for legally protected activity..."; all "claims of breach of contract or covenant (express or implied), and/or promissory estoppel"; and all "tort claims (intentional torts, negligence, defamation, invasion of privacy, intentional infliction of emotional distress, etc.)" in the definition of "covered claims."  (Def.'s Mot. to Dismiss, Doc. No. 5-3 at 9.)  In addition, the Agreement states that "[a]ny dispute concerning the formation, applicability, interpretation, or enforceability of this Agreement shall be subject to arbitration." (*Id.*, at ¶6.)

Muhammad, a Muslim, claims to be the victim of various discriminatory attacks from her Christian co-workers and supervisors at ASI. (Compl., at 3-5.) Muhammad claims she was ridiculed, yelled at, and eventually demoted all because of her religious beliefs. (*Id.*)  In response to the alleged discrimination, Muhammad filed a charge of discrimination with the Equal Employment Opportunity Commission alleging acts of retaliation and religious discrimination. (*Id.*, at 7.)  Muhammad claims that during the pendency of the EEOC investigation, she was again discriminated against by her supervisor at ASI.  On September 3, 2009, Muhammad filed the present complaint containing her claims of retaliation and religious discrimination. (Compl., Doc. No. 1.)  Muhammad also alleges that ASI breached her implied employment contract and that she was slandered and defamed by an agent of ASI. (*Id., at 9.)

3

ASI filed the present motion arguing that under the Federal Arbitration Act ("FAA"), Muhammad is bound to pursue her claims through binding arbitration pursuant to the Agreement which she signed as a condition of her employment with ASI. (Def.'s Mot. to Dismiss, Doc. No. 5.) As proof of her knowledge of this requirement, ASI produced the affidavit of Don Seago, Human Resources Manager at ASI. (Ex. A, Doc. No. 5-2.) In the affidavit, Seago states that prior to filing her complaint, Muhammad had participated in three out of four levels which comprise the ADR process described in the Agreement. (*Id.*, at ¶4.)

Muhammad contends that the Agreement is invalid in its entirety because she was "fraudulently induced" into signing the ADRP documents. In her original affidavit, Muhammad alleged that in signing the alternative dispute resolution documents she relied on the "misrepresentations" of a then unidentified "person" that "the ADRP documents were just an agreement for the employee to attempt to resolve any claim against the company before making the claim against the company in court." (Pl.'s Opp. to Mot. to Dismiss, Doc. No. 7, at 4.)[1]  In a subsequent affidavit, Muhammad identified the ASI

---

[1]     Her affidavit states as follows:
I, Belinda C. Muhammad, being first duly sworn in accordance with the law, hereby depose and state as follows:
1.  I am the plaintiff in the above-entitled action.  I have personal knowledge of the foregoing facts and could completely testify about them if called as a witness.
2.   The person who presented Defendant's ADRP documents to me and others applicants misrepresented herself as being "one of the girls" and ensured and misrepresented that the documents were just an agreement for the employee to attempt to resolve any claim against the company before making the claim against the company in court.
3.   The person who presented the Defendant's ADRP documents to me and others applicants misrepresented further that she signed one herself upon her attorney's approval, and stated that if the documents were not signed within sixty seconds there would be no job period, end of story because she badly needed to go on

employee who pressured her into signing the Agreement as "Rosie Burnette, whom Muhammad described as "an African-American female in her mid to late forties." (Pl.'s Supp. Aff., Doc. No. 14-2 at 3.) On the day of the hearing, ASI filed with the court the affidavit of Jill Sullivan, Center Manager at ASI's Memphis facility, who stated that she had reviewed ASI's employment records and found that no individual named Rosie Burnette was ever employed by ASI at any time. (Sullivan Aff., Doc. No. 17.)

## II.  ANALYSIS

Because the court has relied on evidence outside the pleadings, ASI's motion to dismiss must be treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d).  The Court reviews ASI's motion for summary judgment under the following standard:

> Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *id.* at 323, the nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  If the nonmoving party is unable to make such a showing, summary judgment is appropriate.

---

break.
4.  I reasonably relied upon the aforesaid misrepresentations when I signed the ADRP and did not knowingly and voluntarily relinquish my statutory right to vindicate my Title VII claims in federal court and my right to trial by jury in federal court.  Had I known I was signing away my rights to pursue Title VII claims in federal court and the right to a jury trial, I would not have signed the ADRP.
5.  Defendant certified that it mailed me a copy of its motion on October 26, 2009.  The motion, however, did not arrive at my post office box until November 9, 2009.
    This Affiant sayeth further naught.

*Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).   In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).

Pursuant to Rule 56(e), a "party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotations omitted).   A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." *Id.*   In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A.   <u>Arbitration</u>

Section 2 of the FAA provides in relevant part as follows:

A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract*.

9 U.S.C. § 2 (emphasis added).   The FAA divests the trial court of discretion in ordering the parties to arbitration concerning issues

6

covered by the arbitration provision. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3-4).  Thus, to avoid arbitration, a party must show either(1) the dispute is outside the scope of the arbitration provision or (2) the agreement itself is invalid or unenforceable. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).  The party resisting arbitration bears the burden to show a genuine issue of material fact as to the validity of an agreement to arbitrate.  *Green Tree Fin. Corp.--Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

In this case, there is no dispute that the parties entered into an agreement as a condition of employment which included an arbitration provision or clause and that the arbitration clause expressly includes Title VII claims and the state law claims asserted by Muhammad.  Instead, Muhammad challenges only the enforceability of her employment agreement on the grounds that she was fraudulently induced to sign the employment agreement.  It is further undisputed that the agreement expressly assigns any dispute concerning formation and enforceability to arbitration.

Recently, in the case of *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 177 L. Ed. 2d 403, 2010 U.S. LEXIS 4981 (June 21, 2010), the United States Supreme Court addressed the proper forum for a plaintiff's challenge to a contract as a whole on unconscionability grounds when the contract contained a clause specifically assigning that determination to an arbitrator.  In *Rent-A-Center*, the plaintiff, Antonio Jackson, filed an employment discrimination suit against Rent-A-Center, his former employer.  177 L. Ed. 2d at 409. In response, Rent-A-Center filed a motion to dismiss or stay and to

7

compel arbitration pursuant to a "Mutual Agreement to Arbitrate Claims," which Rent-A-Center claimed Jackson had signed as a condition of his employment. *Id.* The Mutual Agreement to Arbitrate Claims specifically provided that the parties would arbitrate "all 'past, present, or future' disputes arising out of Jackson's employment . . . including 'claims for discrimination' and 'claims for violation of any federal . . . law.'" *Id.* In addition, a separate provision of the same agreement delegated to the arbitrator the "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation" of the Agreement "including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.* The court referred to the latter provision as the "delegation provision." *Id.* at 411.

The Supreme Court held that for a plaintiff to avoid arbitrating a dispute centered on the formation of the parties agreement to arbitrate, the plaintiff's challenge must call into question the formation of the specific portion of the parties' agreement which delegates the authority to decide whether a dispute is covered by the agreement. *Id.* at 413. The Court noted that a delegation provision is merely an "additional, antecedent agreement [which] the party seeking arbitration asks the federal court to enforce, and the FAA operates on the additional arbitration agreement just as it does on any other." *Id.* Thus, "the additional agreement is valid under § 2 [of the FAA] save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (internal quotations omitted). Because "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the

contract," *Buckeye Check Cashing, Inc. v. Cardenga*, 546 U.S. 440, 445 (2006), "challenge[s] to . . . a contract as a whole, [do] not prevent a court from enforcing a specific agreement to arbitrate," *Rent-A-Center*, 177 L. Ed. 2d at 412. Accordingly, a plaintiff must specifically challenge the formation of a "delegation provision" to divest the arbitrator of the authority to determine the enforceability of an agreement to arbitrate. *Id.* This is so regardless of whether the contract as a whole was itself an agreement to arbitrate or a contract dealing with the exchange of goods or services. *See id.* ("Application of the severability rule does not depend on the substance of the remaining contract.")

Here, Muhammad challenges the validity of the ADRP Agreement as a whole, and her claims should therefore be decided by an arbitrator and not the district court. Like the Mutual Agreement to Arbitrate Claims signed by the plaintiff in *Rent-A-Center*, the Agreement in this case contains a "delegation clause" which specifically provides that "[a]ny dispute concerning the formation, applicability, interpretation, or enforceability of this Agreement shall be subject to arbitration." Muhammad alleges no statements by Rosie Burnette or any other ASI employee pertaining to this specific provision of the broader ADRP agreement. Instead, Muhammad alleges that the statements on which she relied pertained to the entire ADRP agreement. Thus, Muhammad's allegation of fraudulent inducement speaks to the Agreement as a whole and not the specific provision requiring the parties to submit issues concerning the enforceability of the Agreement to arbitration. In light of the Supreme Court's decision in *Rent-A-Center*, Muhammad's challenge to the validity and

9

enforceability of the Agreement itself should be determined by the arbitrator.

B.    <u>Remaining Issues</u>

    Because of the court's conclusion, the court makes no further findings or recommendations as to other issues raised by the parties, including specifically the issue of whether the alleged "fraudulent" statements which Muhammad attributes to a "Rosie Burnette" are barred by the parol evidence rule.

IV.   RECOMMENDATION

    For the foregoing reasons, the court recommends that Muhammad's case be dismissed and that the parties be compelled to proceed before an arbitrator pursuant to the Agreement.

    Respectfully submitted this 24th day of August, 2010.


                    s/ Diane K. Vescovo
                    DIANE K. VESCOVO
                    UNITED STATES MAGISTRATE JUDGE